938 A.2d 934 (2007)
397 N.J. Super. 567
Linda C. EDWARDS and Richard Edwards, her husband, Plaintiffs-Respondents
v.
Kevin B. WALSH, Defendant-Appellant, and
Carolyn B. Joseph and Wells Fargo Auto Finance, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 2007.
Decided October 24, 2007.
*935 John P. Gilfillan, Basking Ridge, argued the cause for appellant (Carroll, McNulty & Kull, attorneys; Mr. Gilfillan and Heather E. Simpson, on the brief).
Patricia R. Carley, argued the cause for respondents.
Before Judges WEFING, PARKER and R.B. COLEMAN.
The opinion of the court was delivered by
PARKER, J.A.D.
Defendant Kevin B. Walsh appeals from a judgment entered on July 10, 2006 after a jury found in favor of plaintiffs[1] and awarded them a total of $289,216.71. Defendant also appeals from an order entered on August 23, 2006 denying his motion for a new trial or remittitur and granting plaintiffs' cross-motion for an additional $1,250 in costs and fees. Defendant had conceded liability and the matter was tried on the issues of proximate cause, verbal threshold and damages.
This action arises out of an automobile accident that occurred on November 20, 2001. Plaintiff Linda C. Edwards was taken to the emergency room after the accident, where she complained of pain in the left ankle and lower back, an abrasion to the right wrist and bruises. All of those injuries apparently resolved after the accident.
Plaintiff claimed that she also sustained a neck injury in the accident but did not complain of it in the emergency room. She testified that she began to feel pain in her neck the day after the accident. That day she went to see Dr. Purcell, who prescribed a muscle relaxant. Dr. Purcell sent plaintiff to an orthopedic surgeon, Dr. Rudman. Dr. Rudman prescribed physical therapy, which plaintiff did for a total of twelve weeks beginning in December 2001.
On April 26, 2002, plaintiff had an MRI of the cervical spine, which showed a paracentral disc herniation in contact with the spinal cord. Plaintiff then saw Richard *936 Nachwalter, M.D., who testified at trial by videotaped de bene esse deposition. Dr. Nachwalter acknowledged the C5-6 herniation and diagnosed cervical whiplash. He indicated that the C5-6 herniation was asymptomatic before the accident, and noted that an X-ray taken on October 30, 2002 showed degenerative disc disease at C4-5, 5-6 and 6-7. Dr. Nachwalter saw plaintiff again on November 4, 2002, at which time she was still complaining of persistent neck pain. This time, he diagnosed cervical whiplash and cervical spondylosis. He did not refer to the herniation in that report because plaintiff had "no radicular symptoms," that is, pain or numbness radiating down the arms.
In April 2004, plaintiff had another MRI[2] of the cervical spine which showed a "[l]arge right paracentral disc protrusion C5-6 causing displacement of [the] right side of the cervical cord." Plaintiff continued to see Dr. Rudman and Dr. Nachwalter but began complaining of discomfort radiating down her right arm, along with a dead feeling in her arm, as well as the persistent neck pain. Dr. Nachwalter last saw plaintiff on June 17, 2004, at which time she was still complaining of persistent neck pain with numbness and tingling in her right arm. He diagnosed her with cervical disc herniation at C5-6 and cervical whiplash caused by the accident. He stated that her prognosis was good.
Plaintiff also called Arthur Tiger, M.D., an orthopedic surgeon, to testify as an expert on her behalf. Dr. Tiger first saw plaintiff on November 18, 2002 and diagnosed her with a disc herniation at C5-6 and right-sided radiculopathy. He saw plaintiff again on October 29, 2004 and December 30, 2005. He reviewed the April 2004 MRI and testified that it showed "a significant disc herniation [at C5-6] which indents or pushes into the [spinal] cord." He indicated that "when a disc herniates, it can worsen with time, and this is what happened." In Dr. Tiger's opinion, the herniation was caused by the accident. Dr. Tiger disagreed with Dr. Nachwalter's opinion that the herniation at C5-6 was asymptomatic from the date of the accident until January or February 2004. Dr. Tiger also disagreed with Dr. Nachwalter's finding there was degenerative disc disease in plaintiff's cervical spine and testified that, even if there was, it had nothing to do with the C5-6 herniation.
Defendant called Francis DeLuca, M.D., an orthopedic surgeon, to testify as an expert. Dr. DeLuca agreed with both of plaintiff's experts that there was a disc herniation at C5-6. In his opinion, however, it was not a result of the accident but was degenerative in nature.
The jury found in plaintiff's favor and defendant appeals, arguing that (1) the trial court erred in denying defendant's motion for a directed verdict; (2) the jury award was against the weight of the evidence in light of the divided and contradictory medical evidence; and (3) the trial court erred in charging the jury with aggravation of a pre-existing injury.
We have carefully considered defendant's arguments in light of the applicable law and we are satisfied that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(B) and (E). Nevertheless, we make the following comments.
*937 Both MRIs confirmed, and all of the experts agreed, that plaintiff had a herniated disc at C5-6 and that the injury is permanent. The experts disagreed, however, as to whether the herniation was caused by the accident or resulted from degenerative disc disease. Defendant contends that since plaintiff's two experts took divergent views on that issue, the trial court should have directed a verdict in its favor. We disagree.
A motion for a directed verdict, made pursuant to R. 4:40-1, is governed by the same standards as a motion for involuntary dismissal made pursuant to R. 4:37-2(b); that is, the motion "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:37-2(b). A directed verdict can be entered only if, accepting as true all evidence supporting the party opposing the motion and according that party the benefit of all favorable inferences, reasonable minds could not differ. Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969).
Here, the evidence was clearly sufficient to submit the matter to the jury. Dr. Nachwalter and Dr. Tiger differed in their opinion as to whether there was pre-existing degenerative disc disease and whether the herniation at C5-6 was asymptomatic from the time of the accident until January or February 2004. They agreed, however, that the herniation was significant, that it worsened with time and that it was caused by the accident. Thus, there was no difference in plaintiff's experts' opinions as to the injury, its permanence or its cause. The evidence clearly supported the trial court's denial of defendant's motion for a directed verdict.
Defendant argues that plaintiff failed to meet the verbal threshold because of her experts' differing opinions. Again, plaintiff's experts agreed on the critical aspects of permanency and causation of the injury. Consequently, their testimony met the verbal threshold requirement of demonstrating a permanent injury by objective credible medical evidence. N.J.S.A. 39:6A-8a.
Finally, we find no merit in defendant's argument that the trial court erred in charging the jury on aggravation of a pre-existing injury because plaintiff provided no evidence to support aggravation of a pre-existing injury. Although plaintiff did not raise the issue in her direct case indeed, plaintiff denied any pre-existing injurydefendant raised it in cross-examining Dr. Nachwalter and in Dr. DeLuca's testimony. When defendant objected to charging the jury on pre-existing condition during the charge conference, the trial court correctly noted that defendant was "the one who put it in play here."
Moreover, in his summation, defense counsel read to the jury his question to Dr. Nachwalter: "Doctor can you rule out the possibility that the herniation at C5-6 pre-existed the accident of November 20, 2001?" The doctor responded, "No." Defense counsel then argued to the jury:
So when we look at this time line, and we consider Dr. Nachwalter's testimony, there is certainly enough evidence to support the opinion that the herniated disc at C5-6 pre-existed this accident at issue and was not caused by the trauma of the accident. At the very least, Dr. Nachwalter himself said that it cannot be ruled out.
Defense counsel further argued that an X-ray of plaintiff's cervical spine taken before the accident showed degenerative disc disease at C4-5, C5-6 and C6-7. Nevertheless, in this appeal, defendant argues that there was no evidence that the accident aggravated the degenerative process.
*938 The trial judge gave the following jury charge on pre-existing condition:
Credible evidence is evidence you find to be believable. And there is an issue here as to whether Plaintiff had degenerative disc disease before the motor vehicle accident. I will refer to this condition as a pre-existing injury or condition if she had it, that's up to you to decide.
There are different rules for awarding damages whether a pre-existing injury was or was not causing Plaintiff any symptoms or harm before the accident. Obviously, the Defendants in this case are not responsible for any pre-existing condition the Plaintiff had. As a result, you may not award any money in this case for damages attributable solely to a pre-existing condition.
I will now explain what happens if Plaintiff was experiencing symptoms with a pre-existing condition prior to the accident.
If the injuries sustained in this accident combined and aggravated a pre-existing condition, made it more severe, then Plaintiff may recover for any damages sustained due to aggravation or worsening of the pre-existing condition, but only to the extent of the aggravation or worsening. Plaintiff has the burden of proving what portion of her condition is due to her pre-existing injury. In her particular case, she alleges she had no pre-existing injury.
Plaintiff is entitled to damages only for that portion of her injuries attributable to the accident. However, if you find that Plaintiff had a pre-existing condition and it was not causing her any harm or symptoms at the time of the accident, that the pre-existing condition combined with the injuries incurred in the accident to cause her damage, then Plaintiff is entitled to recover for the full extent of damages she sustained.
So far so good? So now I'll explain what happens if Plaintiff had a pre-disposition from degenerative disc disease, which was causing no symptoms or problems before the accident, but made her more susceptible to the kind of medical problems, the injuries she claims in this case.
If the injuries in this case combined with a pre-disposition to create the Plaintiff's medical condition, then Plaintiff is entitled to recover for all the damage sustained due to that condition. You must not speculate that a person without such pre-disposition or latent condition would have had less pain and suffering or disability. I know that's complicated. If you need to see that in writing, I can send it in to you.
In our review of the record, the charge given was appropriate to the evidence presented at trial.
Affirmed.
NOTES
[1] Plaintiff Linda C. Edwards was the injured party. Plaintiff Richard Edwards is a party to this action based on his per quod claim. References to plaintiff in the singular are to Linda C. Edwards.
[2] Dr. Nachwalter testified that the April 2002 MRI was taken in an open MRI machine and the April 2004 MRI was taken in a closed machine. He explained that the closed machine produces a much high quality image than an open machine and described the difference as that between a five megapixil camera and a one megapixil camera. Consequently, the April 2004 MRI showed the cervical area in greater detail.