NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5714-14T1

JACQUELINE HEREDIA,

 Plaintiff-Appellant,

and

NICOLE TORRES,

 Plaintiff,

v.

NATALIA A. PICCININNI,

 Defendant-Respondent.
_______________________________

 Argued October 27, 2016 – Decided February 15, 2017

 Before Judges O'Connor and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Atlantic County, Docket No. L-
 2182-13.

 Oliver T. Barry argued the cause for appellant
 (Barry, Corrado & Grassi, P.C., attorneys; Mr.
 Barry, on the briefs).

 Stephen A. Rudolph argued the cause for
 respondent (Rudolph & Kayal P.A., attorneys;
 Mr. Rudolph, on the brief).
 Michael J. Epstein argued the cause for amicus
 curiae New Jersey Association for Justice (The
 Epstein Law Firm, P.A., attorneys; Mr.
 Epstein, of counsel and on the brief; Michael
 A. Rabasca, on the brief).

 New Jersey State Bar Association, attorneys
 for amicus curiae New Jersey State Bar
 Association (Miles S. Winder, III, of counsel
 and on the brief; Lauren D. Fraser, John E.
 Gregory, Liana M. Nobile and Michael R.
 Paglione, on the brief).

PER CURIAM

 In this automobile negligence action, plaintiff Jacqueline

Heredia appeals from a September 2, 2015 judgment and an August

7, 2015 order denying her motion for new trial.1 Plaintiff

contends the trial judge erred when he failed to ask prospective

jurors open-ended questions, as mandated by Directive #4-07, (the

Directive) depriving her of the opportunity to conduct meaningful

jury voir dire. Additionally, plaintiff argues the trial judge

erred when he declined to charge the jury with the aggravation of

injury charge found in Model Civil Jury Charge 8.11F.

 It is an abuse of discretion for trial courts not to ask at

least three open-ended questions of prospective jurors during jury

1
 Plaintiff originally filed a Notice of Appeal of the June 23,
2015 jury verdict of no cause of action; however, she subsequently
filed an amended Notice of Appeal to reflect she was appealing
from the September 2, 2015 final judgment denying her motion for
a new trial.

 2 A-5714-14T1
selection, as mandated by the Directive; therefore, we vacate the

judgment, and reverse and remand for a new trial.

 In her complaint, plaintiff alleged she and defendant were

involved in a car accident, during which plaintiff sustained bodily

injury.2 The limitation on lawsuit option (the so-called "verbal

threshold") applies in this case. See N.J.S.A. 39:6A-8. Before

trial, defendant stipulated liability. In preparation for jury

selection, plaintiff submitted five open-ended questions to be

asked of prospective jurors:

 1. What are your feelings regarding the
 proposition that accidents resulting in
 serious damage to a vehicle may result in no
 bodily injuries and accidents resulting in
 little damage to a vehicle may result in
 serious bodily injuries?

 2. Describe by way of an example an experience
 in your life that illustrates your ability to
 be fair and open-minded in this case.

 3. Who are the two people that you least
 admire and why?

 4. What would you do about the homeless
 situation?

 5. What would you do about those without
 medical insurance?

2
 Nicole Torres was a passenger in plaintiff's car at the time of
the accident. Torres also filed a complaint against defendant but
ultimately settled before the trial was over.

 3 A-5714-14T1
 The trial judge declined to include any of plaintiff's

proposed open-ended questions in the list of questions. The judge

found the first question "redundant." As for the second question,

the judge stated he would be asking many open-ended and non-leading

questions when asking prospective jurors seated in the box about

their biographical background; therefore, the judge found it

inappropriate to ask the question. The judge rejected the third,

fourth, and fifth questions because the questions did not "add to

anything" or were irrelevant.

 As the array entered the courtroom for jury selection, each

prospective juror received the Civil Model Jury Selection

Questions, as promulgated by the Directive, without any open-ended

questions. The judge asked each juror seated in the box multiple

biographical questions required by the Directive.3 During jury

selection, plaintiff used only two of her six peremptory

challenges. See R. 1:8-3(c). Plaintiff's counsel advised the

court on four separate occasions the jury was satisfactory.

 Trial commenced on June 18, 2015. Plaintiff called Dr. Young

Lee, an anesthesiologist specializing in pain management. Dr. Lee

testified plaintiff told him she had never been in a motor vehicle

3
 These questions included, among others, how they received their
news, what their favorite television shows were, if they have any
bumper stickers on their car, how they spend their time, and if
there was anything else they thought the lawyers should know.

 4 A-5714-14T1
accident prior to June 3, 2011. Dr. Lee also testified plaintiff

had disk herniation and while pain management could control the

pain, the herniation was permanent. Plaintiff also called Dr.

James Panaia, a chiropractor, who testified plaintiff had a

permanent disk herniation. Lastly, plaintiff called radiologist

Dr. Ralph Dauito, who stated MRIs taken after the accident revealed

disk herniation that would never heal to function normally.

 Defendant called orthopedic surgeon, Dr. Robert Ponzio. Dr.

Ponzio testified plaintiff suffered a cervical strain and sprain

injury, and opined plaintiff's injuries were permanent. Dr. Ponzio

testified plaintiff had disc bulging, but he considered her

condition to be unrelated to the accident. Because plaintiff had

no prior history of pain, Dr. Ponzio conceded on cross-examination

it was possible to have degeneration in the spine without symptoms

of pain or discomfort, and a single traumatic event could cause

previously asymptomatic conditions to become symptomatic. Dr.

Ponzio testified disc herniation is a permanent injury.

 At trial, plaintiff argued the judge erroneously denied her

request to charge Model Civil Jury Charge 8.11F,

aggravation/activation of preexisting asymptomatic conditions,

based upon the testimony of Dr. Ponzio. The trial judge denied

the request because neither Dr. Ponzio nor any other expert witness

 5 A-5714-14T1
testified an underlying condition was aggravated as a result of

the accident.

 The jury returned a verdict of no cause of action on the non-

economic losses but awarded plaintiff economic damages of

$18,534.41, representing the full value of plaintiff's outstanding

medical bills. Plaintiff filed a motion for new trial on July 9,

2015, arguing the trial judge should have asked the open-ended

voir dire questions she proposed, as well as charged the jury on

aggravation of preexisting injury. After hearing arguments on

August 7, 2015, the trial judge denied the motion. This appeal

followed.

 I.

 On appeal, plaintiff argues the trial court improperly

disregarded the Directive by failing to ask open-ended questions

during voir dire. We agree a trial judge must ask open-ended

questions pursuant to this Directive. We are therefore constrained

to vacate the judgment, and reverse and remand for a new trial,

to be conducted in accordance with the Directive.

 The Directive provides direction from our Supreme Court about

how to conduct the voir dire process. See Administrative Directive

#4-07, "Jury Selection – Model Voir Dire Questions Promulgated by

Directive #21-06 – Revised Procedures and Questions" (May 16,

2007),

 6 A-5714-14T1
http://www.judiciary.state.nj.us/directive/2007/dir_04_07.pdf.

The purpose of the Directive is to "empanel a jury without bias,

prejudice, or unfairness." Gonzalez v. Silver, 407 N.J. Super.

576, 596 (App. Div. 2009) (citing State v. Morales, 390 N.J. Super.

470, 472 (App. Div. 2007)). Among other things, pursuant to the

Directive, the trial judge is required to ask each juror at least

three questions that require answers in narrative form. Ibid.

 Specifically, the Directive directs, in pertinent part, the

following:

 In addition to the printed questions, the
 judge shall also inform the jurors in the box
 and the array that jurors will also be
 individually asked several questions that they
 will be required to answer in narrative form.

 . . . .

 The judge will then ask [the] juror each of
 the open-ended questions, to which a verbal
 response shall be given and for which
 appropriate follow up questions will be asked.

 . . . .

 Some open-ended questions must be posed
 verbally to each juror to elicit a verbal
 response. The purpose of this requirement is
 to ensure that jurors verbalize their answers,
 so the court, attorneys and litigants can
 better assess the jurors' attitudes and
 ascertain any possible bias or prejudice, not
 evident from a yes or no response, that might
 interfere with the ability of that juror to
 be fair and impartial. Open-ended questions
 also will provide an opportunity to assess a
 juror's reasoning ability and capacity to

 7 A-5714-14T1
 remember information, demeanor,
 forthrightness or hesitancy, body language,
 facial expressions, etc.

 . . . .

 The judge must ask at least three such
 questions, in addition to the biographical
 question and the two omnibus qualifying
 questions. This is a minimum number and
 judges are encouraged to ask more where such
 action would be appropriate.

The Directive is binding upon all trial courts. See Gonzalez,

supra, 407 N.J. Super. at 598.

 Here, the trial judge asked what he considered open-ended

questions; he defined open-ended questions as "questions that call

for something other than an yes or no response." However, the

questions the judge referred to were either the required

biographical or omnibus questions. Such questions may offer some

insight into the perspective of prospective jurors, but they do

not satisfy the mandate to ask open-ended questions. The Directive

unequivocally states the trial judge must ask at least three open-

ended questions. While the trial judge was within his discretion

to reject plaintiff's proposed open-ended questions, it was an

abuse of discretion not to ask any other open-ended questions as

 8 A-5714-14T1
directed by the Directive.4

 We next turn to the question of whether the error warrants

reversal of the trial judgment of no cause for action and the

denial of a motion for new trial. We have previously said judges

have an affirmative obligation to adhere to administrative

directives governing the voir dire process, but counsel also has

a duty to raise objection to the jury selection process. Gonzalez,

supra, 407 N.J. Super. at 596. We have also said there must be a

"miscarriage of justice" that resulted from the failure to follow

the Directive in order to reverse a judgment. Ibid. Rule 2:10-2

provides "[a]ny error or omission shall be disregarded by the

appellate court unless it is of such a nature as to have been

clearly capable of producing an unjust result . . . ." Plaintiff

here requested voir dire questions ultimately rejected by the

court, with assurances open-ended questions would be asked.

 Accordingly, we apply the harmless error rule to determine

whether the trial court's failure to ask additional open-ended

questions was of "such a nature as to have been clearly capable

4
 Appended to the Directive are examples of open-ended questions
that may be used. The New Jersey Judiciary Jury Selection Manual
contains additional questions. The examples are not the only
questions that may be used. The court and parties may create
their own questions. See Administrative Directive #4-07, "Jury
Selection – Model Voir Dire Questions Promulgated by Directive
#21-06 – Revised Procedures and Questions" (May 16, 2007),
http://www.judiciary.state.nj.us/directive/2007/dir_04_07.pdf.

 9 A-5714-14T1
of producing an unjust result." R. 2:10-2. Based upon our review

of the record, we cannot conclude the voir dire was sufficiently

comprehensive to ensure an impartial jury was ultimately

empaneled; the omission of required open-ended questions was not

harmless.

 II.

 Plaintiff also argues the trial judge erred by refusing to

instruct the jury pursuant to Model Civil Jury Charge 8.11F. We

disagree.

 Model Civil Jury Charge 8.11F states in relevant part,

 If you find that [plaintiff's] preexisting
 illness/injury(ies)/condition was not causing
 him/her any harm or symptoms at the time of
 the accident, but that the preexisting
 condition combined with injuries incurred in
 the accident to cause him/her damage, then
 [plaintiff] is entitled to recover for the
 full extent of the damage he/she sustained.

 [Model Jury Charge (Civil), 8.11F "Aggravation
 of the Preexisting Disability" (1997).]

For an aggravation charge to be appropriate, plaintiff must provide

evidence to support aggravation of a pre-existing injury. See

Edwards v. Walsh, 397 N.J. Super. 567, 572 (App. Div. 2007).

However, if defendant raises the issue on cross-examination, the

charge would also be appropriate. Ibid. It is therefore the

plaintiff's burden to "prepare for comparative medical evidence"

or be "at risk of failing to raise a jury-worthy factual issue

 10 A-5714-14T1
about whether the subject accident causes the injuries." Davidson

v. Slater, 189 N.J. 166, 188 (2007).

 The failure to instruct the jury correctly constitutes

reversible error, Velazquez v. Portadin, 163 N.J. 677, 688 (2000)

(citing Patton v. Ambio, 314 N.J. Super. 1, 10 (App. Div. 1998));

however, the trial judge here correctly charged the jury.

Plaintiff's witnesses testified plaintiff did not have a prior

condition and the injuries she incurred were caused by the

accident. Additionally, plaintiff's counsel stated prior to jury

selection plaintiff was not making a claim of aggravation of a

pre-existing condition.

 During trial, plaintiff's counsel asked hypothetical

questions during cross-examination of Dr. Ponzio to which he

responded it is possible to have degeneration of the spine without

symptoms, and it is possible for a single incident to cause the

conditions to become symptomatic. Dr. Ponzio did not testify

plaintiff had a preexisting condition exacerbated by the accident.

Counsel's questions merely elicited from Dr. Ponzio that it was

"possible." Additionally, plaintiff presented no evidence of

having a preexisting condition. The trial judge therefore properly

denied plaintiff's request to charge the jury with Model Civil

Jury Charge 8.11F.

 11 A-5714-14T1
 Because we reverse on other grounds, we need not address

plaintiff's arguments about the cumulative effect of the trial

court's errors.

 Judgment vacated. Reversed and remanded for a new trial

consistent with this opinion.

 12 A-5714-14T1