# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2634-21

A.E.R.,[1]

    Plaintiff-Respondent,

v.

R.J.R.,

    Defendant-Appellant.

_____

Submitted December 19, 2023 – Decided January 8, 2024

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0497-22.

John V. Saykanic, attorney for appellant.

Weinberger Divorce & Family Law Group, LLC, attorneys for respondent (Francine M. Aster and Wayne G. Perry, on the brief).

PER CURIAM

---

[1] We use initials to protect the privacy of the parties. R. 1:38-3(d)(10).

The parties were married in June 2016 and have two children. In June 2021, the parties had an argument and discussed filing for divorce. They later separated with plaintiff residing in the marital residence and defendant living in an apartment in a neighboring town.

Plaintiff commenced this action pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, by filing a Temporary Restraining Order ("TRO") against defendant in June 2021 based on allegations defendant was physically and verbally abusive toward her. On July 12, 2021, the parties entered into a Civil Restraining and Custody Agreement ("Agreement") which dismissed the TRO in favor of the Agreement and set forth various restraints and conditions.

Specifically, the Agreement expressly prohibited defendant from stalking plaintiff, granted her exclusive use of the marital home, and stated the parties intended the restraints to survive any divorce as the Agreement was "to be incorporated into [the] FM docket as a Consent Order if and when a matrimonial complaint is filed by any party." Additionally, under the terms of the Agreement, defendant agreed to attend a gambling addiction course, undergo a "risk assessment and psychological evaluation," and submit to a drug test.

A-2634-21

On December 24, 2021, shortly after the Agreement was entered, plaintiff filed for and obtained a second TRO ("December 2021 TRO") after she observed defendant inexplicably driving by her home multiple times, in violation of the Agreement. She specifically alleged she had not seen her husband recently and, when she last saw him, she "never knew which version" of defendant "was coming home any given night" as he was either "manic" or in a "state of rage." Plaintiff testified defendant had a gambling problem, was suicidal, and used steroids. Plaintiff submitted into evidence documentation of twenty-four independent incidents of defendant driving by her home, testified to seven, and stated defendant had no reason to drive by the house as he lived in a neighboring town. Plaintiff stated each time defendant drove by her home, she was "scared" and "concerned."

At the conclusion of a two-day trial, Judge James M. DeMarzo found defendant had stalked plaintiff and he entered a final restraining order (FRO) in her favor. He also awarded plaintiff exclusive use of the marital home. Defendant appeals the FRO arguing[2]:

---

[2] We have reorganized certain of defendant's point headings to facilitate our discussion of the issues.

3

POINT I

THE FRO SHOULD BE VACATED AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF STALKING (THE PREDICATE ACT) AND INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING THAT THE FRO WAS NEEDED TO ENSURE PLAINTIFF-RESPONDENT'S FUTURE PROTECTION

POINT II

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISQUALIFYING [DEFENDANT'S] FORMER ATTORNEY DUE TO AN INCORRECTLY PERCEIVED CONFLICT

POINT III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RELYING ON THE [] AGREEMENT THAT WAS: A) TAINTED IF [DEFENDANT'S] COUNSEL, AS FOUND BY THE TRIAL COURT, HAD A CONFLICT; ALTERNATIVELY B) NOT IN EVIDENCE MAKING INVALID THE TRIAL COURT'S RELIANCE ON THE AGREMEENT AS TO THE PREDICATE ACT OF STALKING

[A.]

THE [] AGREEMENT WAS INADMISSIBLE IF [DEFENDANT'S PRIOR COUNSEL] HAD A DISQUALIFYING CONFLICT

[B.]

THE [] AGREEMENT WAS NOT PROPERLY IN EVIDENCE IN THE COURT BELOW

4

POINT IV
THE TRIAL COURT ERRED IN DENYING THE
MOTION FOR A DIRECTED VERDICT

We find insufficient merit in these arguments to warrant extensive discussion in a written opinion. R. 2:11–3(e)(1)(E).

To briefly amplify our disposition of defendant's arguments, we start by observing we reject his contention in Point I as there was sufficient evidence to support all Judge DeMarzo's findings, which are deserving of appellate deference. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We are also satisfied the judge properly interpreted and applied the stalking statute, N.J.S.A. 2C:12–10, in finding an act of domestic violence to support plaintiff's domestic violence claim, N.J.S.A. 2C:25–19(a)(14) (including "stalking" within the definition of "domestic violence").

The evidence adduced by plaintiff demonstrated that defendant drove by plaintiff's house dozens of times, in violation of the parties' Agreement, and disregarded various other provisions of the Agreement as well. The judge found defendant's conduct to be a legitimate concern of plaintiff's, as stalking was specifically prohibited by the Agreement. The judge concluded defendant's true intent when repeatedly driving by plaintiff's residence, absent any other

5

explanation offered, was to stalk her. There was ample credible evidence from which the judge could draw such a conclusion.

Substantially for the reasons set forth by Judge DeMarzo in his thorough and well-reasoned oral opinion, we agree that defendant's conduct violated the stalking statute: defendant's actions constituted a course of conduct within the meaning of N.J.S.A. 2C:12–10(a)(1); were directed at plaintiff; and would "cause a reasonable person to fear for [her] safety . . . or suffer other emotional distress," N.J.S.A. 2C:12–10(b).

We also reject defendant's contention the judge failed to make adequate Silver[3] findings. Upon finding a predicate act of domestic violence occurred, as Judge DeMarzo did in this case, the judge next considers if "a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006)). The factors which the judge should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

---

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

The court is not mandated to incorporate all factors into its findings when determining whether an act of domestic violence has occurred. Cesare, 154 N.J. at 401-02. Additionally, the Act requires courts to evaluate claims of domestic violence in light of the history of the parties. Ibid. (quoting Peranio v. Peranio, 280 N.J. Super 47, 54 (App. Div. 1995)). As such, "a court may . . . determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." Ibid.

Contrary to defendant's argument, Judge DeMarzo properly found plaintiff met the second prong of Silver because the civil restraint set forth in the Agreement that prohibited defendant from stalking plaintiff was clearly insufficient to prevent defendant's conduct and his actions placed her in fear for

her safety as she credibly testified. Indeed, defendant drove by plaintiff's home on numerous occasions after the parties entered into the Agreement and before plaintiff filed the second TRO. The December 2021 TRO, rather than the Agreement, caused defendant to cease his conduct. As such, the court properly concluded the civil restraint was insufficient to prevent defendant's conduct and properly entered the FRO after considering plaintiff's reasonable fears for her safety.

Defendant's arguments in Point II are similarly without merit. Evidence presented to Judge DeMarzo demonstrated an attorney-client relationship existed between plaintiff and defendant's former attorney. Indeed, an attorney-client relationship is formed when "the prospective client requests the lawyer to undertake the representation, the lawyer agrees to do so and preliminary conversations are held between the attorney and client regarding the case." Herbert v. Haytaian, 292 N.J. Super. 426, 436 (App. Div. 1996). Further, an attorney-client relationship may be inferred "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or

assistance." Ibid. (quoting Bays v. Theran, 418 Mass. 685, 639 (1994) (internal quotation marks omitted)).

Here, the judge correctly found an attorney-client relationship existed between former counsel and plaintiff because, prior to counsel's representation, he consulted with both parties about their divorce and the Agreement. Judge DeMarzo noted counsel acted within his professional competence as a matrimonial attorney when he "sat down and started to talk about settling the divorce like a mediator," and provided counsel or advice to plaintiff concerning her divorce when they discussed the Agreement. As such, the judge correctly found an attorney-client relationship existed and properly disqualified counsel from subsequently representing defendant in the matter. See RPC 1.9(a).

With respect to defendant's contention in Point III, and specifically his claim Judge DeMarzo erred in relying on the Agreement, we similarly find that argument unpersuasive. Indeed, the parties entered into the Agreement and attested they were doing so "of their own volition without any duress, undue influence or coercion of any kind," and the judge specifically found nothing before him established it "wasn't voluntarily entered into." Because defendant did not show fraud, duress, or other compelling circumstances, and as the parties stated they entered the Agreement freely, we reject defendant's contention his

prior counsel's disqualification nullified the Agreement or prevented the judge from relying on it, particularly as it was clearly relevant to discern defendant's intent related to the predicate act of stalking. None of the authority cited by defendant compels a contrary result.

We similarly reject defendant's contention Judge DeMarzo erred in considering the Agreement because it was not offered into evidence. As the judge noted, the Agreement was part of the record in the parties' concurrent FM case, and he therefore properly took judicial notice of and considered it in the FRO proceeding. See N.J.R.E. 201(b)(4).

Finally, as plaintiff's testimony fully supported the entry of the FRO, we conclude defendant's challenge to Judge DeMarzo's ruling denying his application for a directed verdict is also without merit. See R. 4:40-1; see also Edwards v. Walsh, 397 N.J. Super. 567, 571 (App. Div. 2007) (stating a motion for a directed verdict will be granted "only if, accepting as true all evidence supporting the party opposing the motion and according that party the benefit of all favorable inferences, reasonable minds could not differ." (citing Dolson v. Anastasia, 55 N.J. 2, 5 (1969))).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2634-21