**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3033-23

MADISON JOO,

     Plaintiff-Appellant,

v.

GREGORY CORLESS and
FRANCISCA CORLESS,

     Defendants,

and

FARMERS INSURANCE,

     Defendant-Respondent.

---

Argued March 12, 2025 – Decided May 6, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0819-21.

Ronald S. Yuro argued the cause for appellant (Levinson Axelrod, PA, attorneys; Ronald S. Yuro, on the briefs).

Laura L. Meny argued the cause for respondent (Law Offices of Nancy L. Callegher, attorneys; Laura L. Meny, on the brief).

PER CURIAM

In this matter, plaintiff Madison Joo sought damages for personal injuries she sustained in a December 2019 automobile accident. She settled her case with the Corless defendants and went to trial with defendant Farmers Insurance, seeking underinsured motorist benefits. The jury found plaintiff did not prove she sustained a permanent injury proximately caused by the accident. Plaintiff moved for a new trial, asserting the trial court erred in not instructing the jury with Model Jury Charge (Civil), 8.11F, "Aggravation of the Preexisting Disability" (approved Jan. 1997). Plaintiff appeals from the court's order denying the new trial.

Because plaintiff did not present any medical evidence that a preexisting condition was aggravated by the motor vehicle accident, the aggravation charge was not warranted or applicable. We affirm.

During trial, plaintiff testified she was involved in one prior car accident but was not injured. She stated she was in excellent health and had no pain in her neck or back prior to the December 2019 accident. Plaintiff described the happening of the accident and her complaints to the emergency department

2

physicians—pain in her legs, neck, shoulder, and back. Plaintiff sought treatment from an orthopedic surgeon—Dr. Justin P. Kubeck—and underwent a course of physical therapy.

Plaintiff had an MRI of the cervical and lumbar spines in July 2020 and an epidural injection to the cervical area in September. The injection only gave her short-lived relief, so she had a second injection in November. Dr. Kubeck also recommended chiropractic treatment.

Plaintiff testified she did not pursue any medical treatment between November 2020 and the summer of 2021 because she had a family member and friend who were having "medical difficult[ies]." When plaintiff resumed treatment in 2021, she saw a pain management doctor—Dr. Scott Woska—for the continuing pain in her back, neck, right shoulder, and hip.

Dr. Woska recommended a cervical medial block injection. Plaintiff had two injections into her neck but found they did not give her long term relief. She also had several epidural injections into her lumbar spine but the relief was similarly short-lived.

Plaintiff stated that Dr. Woska also recommended radio-frequency ablation. She testified she underwent the procedure in December 2021 which

3

gave her some lasting relief. She had additional ablations for both spines in August 2022, April, and June 2023.

As of the April 2024 trial, plaintiff testified she still experiences pain in her neck and back daily. She also has pain in her right hip that is "connected to [her] emotions." She had not had any medical treatment in the ten months prior to the trial. She has her own business and works from home.

Dr. Woska testified plaintiff had herniated discs at C3-4, C4-5, C6-7, and L5-SI levels. He testified these injuries were caused by the December 2019 accident and her injuries are permanent. When Dr. Woska last saw plaintiff in June 2023, he said her neck pain was one out of ten and her back pain was two out of ten. He said "[s]he was doing quite well," and "[h]er functional activity had returned to normal."

Dr. Kubeck testified that he saw plaintiff in February 2020. During his physical examination he noted plaintiff had limited range of motion in her neck and some tenderness in her lower back.

Dr. Kubeck testified that he reviewed the MRI images which revealed plaintiff, then aged 53, had herniated discs at C3-4, C4-5, and C5-6 and then "to a lesser degree" at C6-7. The doctor saw "minimal" degenerative changes. The

4

doctor noted that after the second epidural injection, plaintiff described "her pain was down to a . . . two out of [ten]."

In reviewing the lumbar spine MRI, Dr. Kubeck testified that the "L5-S1 disc [wa]s protruding." He stated "there's really not any signs of aging or preexisting arthritis in her low back."

Dr. Kubeck stated that he discussed a multi-level anterior cervical discectomy and fusion surgery with plaintiff, but she wanted "to fully exhaust a[ll] of her non-operative or pain management treatment" before surgery. Dr. Kubeck saw plaintiff after she underwent the radiofrequency ablation and found she had done well following the procedure.

At a later visit, Dr. Kubeck discussed surgery with plaintiff for her lumbar spine complaints. When he last saw plaintiff in April 2023, she continued to have the same complaints to her neck and back. Dr. Kubeck opined that plaintiff's injuries to the cervical and lumbar spines were caused by the December 2019 accident and they were permanent. On cross-examination, Dr. Kubeck testified plaintiff had "minimal age[-]appropriate wear and tear" in the areas of her cervical disc herniations.

Dr. Joseph Dryer, a board-certified orthopedic surgeon, testified he examined plaintiff in June 2022 and issued two reports thereafter. Dr. Dryer concluded

that following his physical examination, he "did not find any evidence of a permanent injury." He found plaintiff had suffered a cervical and lumbar strain, which were temporary injuries. He stated that a strain could take from six weeks to six months to heal.

After Dr. Dryer reviewed the MRI films, he issued a second report, stating his opinion did not change, in fact it "was confirmed." He found plaintiff had suffered a "[c]ervical strain, lumbar strain, right shoulder strain, and a right hip strain. But none of th[e injuries] were permanent." He testified there were no records of plaintiff experiencing pain in her neck or back prior to the accident.

In discussing the lumbar MRI films, Dr. Dryer described he saw "[n]o evidence of acute trauma or injury [but found s]ome disc bulges," which he stated were "a normal finding in any human being." Dr. Dryer disagreed with Dr. Kubeck's reading of the films of a herniated disc at L5-S1. He demonstrated to the jury his reasoning that the L5-S1 disc did not look any different than the other lumbar discs.

The doctor's review of the cervical spine MRI films similarly revealed "no evidence of acute trauma or injury." Dr. Dryer stated "[t]here was disc degeneration at all levels of the cervical spine, or degenerative disc disease. Disc herniations at C3-4, C4-5, and C5-6. No compression of the spinal cord,

A-3033-23

and intact facet joints." He described the changes seen in the cervical spine as "part of the normal aging process."

Because a patient's complaints of pain are subjective, Dr. Dryer testified he accepted plaintiff's complaints. However, objectively, based on the radiological evidence and his physical examinations, he opined that plaintiff did not sustain a permanent injury related to the accident.

During cross-examination, the following colloquy took place:

> [PLAINTIFF'S COUNSEL]: Okay, so then is it fair to say that any treatment she received after that strain healed was related to an injury other than her strain?
>
> [DR. DRYER]: No. I think it was probably related to leftover pain from degeneration. She has various levels of degeneration. And it's reasonable for her to have additional treatment.
>
> [PLAINTIFF'S COUNSEL]: Okay, and was that degeneration causing her pain before the accident?
>
> [Dr. DRYER]: There are no records showing she had pain before the accident.
>
> [PLAINTIFF'S COUNSEL]: Okay, so is it your opinion that degeneration was aggravated as a result of the accident, [and] became symptomatic?
>
> [DR. DRYER]: No. Because on physical exam, her physical exam [was] normal.

[PLAINTIFF'S COUNSEL]: Well, didn't you just testify that it was a degeneration causing the pain after that . . . six weeks to six months?

[DR. DRYER]: It could [have been] causing pain before or after. Again, I don't have records proving it. But as we age, she is now 5[6], the chance of her having back or neck pain before this accident is 100 percent.

During the charge conference, plaintiff requested the aggravation charge.

In denying the request, the court stated:

Okay. I don't frankly see this one as even being close. I am not going to give the aggravation charge. The test, while counsel may be right, is that [Dr. Dryer] doesn't have to use the magic language affirmatively. Here he clearly uses it and makes every indication that it is not . . . . And even the questioning is skewed. The questioning that was asked during this was treatment. It was about treatment.

And [Dr. Dryer's] opinion all along was that [plaintiff] had degeneration. These herniated disks were part of the degeneration, which he opined were painful to her. And that's the cause of her subjective pain.

And so all he said was yes . . . to the question, which doesn't ask about aggravation because the one that asks about aggravation gets the door slammed right in its face.

But this question says ["]so is it fair to say that any treatment she received after the strain healed was related to an injury other than her strain[?"] Answer, ["]no, I think it was probably the leftover pain from degeneration. She has various levels of degeneration

8

and it is reasonable for her to have additional treatment. He's speaking of treatment.["]

Then question: "Okay. And was that degeneration causing her pain before the accident?" Answer: "There are no records showing she had pain before the accident." I don't see that as being material frankly. That's subjective. And, and we know—I mean, that's not the test, whether or not she's saying she had pain before the accident. He's still talking about a condition.

Question: "Okay. So is it your opinion . . . that the degeneration was aggravated as a result of this accident [and] became symptomatic?" Answer: "No . . . her physical exam was normal."

. . . [I]f . . . plaintiff wanted to proceed with her case . . . as an aggravation case in addition to her direct claims, she could have done that.

This is not even a shoehorn in which I think it's appropriate to give an aggravation charge. Frankly I think it would be reversible error if I gave an aggravation charge based upon the clear testimony of the doctor saying no. And the simple verbiage of a question preceding . . . that purports to open that door, I don't even see it as having been opened. Because as I reread it and his prior testimony that I considered, he's clearly been on the same page in his testimony throughout, which is that . . . if she had . . . prior treatments for anything and the degeneration is there, it's reasonable that she was treating for her degeneration. But he didn't say the degeneration was changed in any respect because of this accident. So I'm not going to charge [aggravation].

The jury returned a verdict in favor of Farmers Insurance.

9

Plaintiff subsequently moved for a new trial, asserting the court erred in failing to give the aggravation charge. The court denied the motion, stating in its oral decision:

> So this is a motion for a new trial under [Rule] 4:49-1A. But it's not the typical motion under an application under that rule because you're not really arguing that the jury did something wrong. You're arguing there was an error by the court.
>
> So a lot of the analysis . . . for setting aside a jury verdict really isn't on par here. Because I'm not ruling that there was a miscarriage of justice [by] the jury . . . . Rather, it's being argued that the court should have done something.
>
> And it's for that reason I'm not going to go into all the other evidence that was put forth . . . before the jury including the testimony of the plaintiff, her credibility, my feel for the case so to speak.
>
> And so I'm not going to go through that in this analysis. And, you know, I stand by my analysis of the case law at the time of trial . . . .
>
> When confronted with the doctor [who] clearly and unequivocally states no, I don't think it's appropriate to give the aggravation charge.
>
> And I'm going to reference my comments on the record at the time of the trial [as] . . . I don't see [the charge] being appropriate here.
>
> And I think I said it at the time of the trial. If not, I'll say it again. I think that I do agree with defense counsel if you wanted it further drawn out from Dr.

A-3033-23

Dryer to bring that out, you had the ability to do it when you were cross examining him. And you left it right after I believe he says no.

So in the face of that, I found it appropriate not to give the aggravation charge. And I stay with that. . . . I just don't think the aggravation charge on these facts should have been given.

On appeal, plaintiff contends the court erred in not instructing the jury with the aggravation charge, and the refusal to do so had the clear capacity to produce an unjust result, warranting a new trial.

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)).

In evaluating the trial court's "decision to grant or deny a new trial, 'an appellate court must give "due deference" to the trial court's "feel of the case."'" Ibid. (quoting Risko, 206 N.J. at 522). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id. at 387 (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

11

We review a trial court's instruction on the law de novo.  State ex rel.

Comm'r of Transp. v. Marlton Plaza Assocs., L.P., 426 N.J. Super. 337, 347-48

(App. Div. 2012).

The aggravation charge provides in pertinent part:

> In this case, evidence has been presented that [plaintiff] had an illness/injury(ies)/condition before the accident/incident—that is [describe the alleged preexisting injury].  I will refer to this condition as the preexisting injury.  There are different rules for awarding damages depending on whether the preexisting injury was or was not causing plaintiff any harm or symptoms at the time of this accident.

> Obviously, the defendants in this case are not responsible for any preexisting injury of [plaintiff].  As a result, you may not award any money in this case for damages attributable solely to any preexisting illness/injury(ies)/condition.

> I will now explain what happens if the [plaintiff] was experiencing symptoms of the preexisting condition at the time of the accident.  If the injuries sustained in this accident aggravated or made [plaintiff's] preexisting injury more severe, then the [plaintiff] may recover for any damages sustained due to an aggravation or worsening of a preexisting illness/injury(ies)/condition but only to the extent of that aggravation. Plaintiff has the burden of proving what portion of his/her condition is due to his/her preexisting injury.  [Plaintiff] is entitled to damages only for that portion of his/her injuries attributable to the accident.

A-3033-23

> If you find that [plaintiff's] preexisting illness/injury(ies)/condition was not causing him/her any harm or symptoms at the time of the accident, but that the preexisting condition combined with injuries incurred in the accident to cause him/her damage, then [plaintiff] is entitled to recover for the full extent of the damages he/she sustained.
>
> [Model Jury Charges (Civil), 8.11F at 1-2 (alterations in original).]

Plaintiff testified she was in excellent health before the accident and had no symptoms or pain. Therefore, only the last paragraph of the charge would be applicable. However, plaintiff did not plead that the accident aggravated a pre-existing condition. In addition, although Dr. Kubeck noted degeneration in plaintiff's neck, he described it as "minimal" and "age[-]appropriate changes." He did not see any degeneration in plaintiff's lumbar spine. Dr. Kubeck was not asked whether the accident aggravated any preexisting condition and therefore did not opine on the issue. Dr. Woska was similarly not asked about any preexisting condition or whether it was aggravated by the accident.

Plaintiff's experts concluded plaintiff had herniated discs in her neck and back resulting from the accident. Dr. Dryer opined that plaintiff suffered temporary strains to her cervical and lumbar spines that would resolve in time. He found the herniated discs seen on MRI images were degenerative. Defense

counsel did not ask Dr. Dryer on direct examination if the accident aggravated the preexisting degenerative condition.

During cross-examination, plaintiff's counsel asked Dr. Dryer if it was his opinion that the degeneration was aggravated as a result of the accident. The doctor responded "no." Contrary to plaintiff's contention on appeal, neither Dr. Dryer nor defense counsel raised aggravation of the degenerative condition as a possible cause for plaintiff's ongoing complaints of pain. Unlike in Edwards v. Walsh, 397 N.J. Super. 567, 572 (App. Div. 2007), upon which plaintiff relies, defendant did not "put [the aggravation issue] in[to] play." There was no medical evidence presented in the case to support the aggravation charge. The court properly denied plaintiff's motion for a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3033-23