915 A.2d 1090 (2007)
390 N.J. Super. 470
STATE of New Jersey, Plaintiff,
v.
Jean MORALES, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 2007.
Decided by Order January 26, 2007.
Opinion February 9, 2007.
Theodore J. Romankow, Union County Prosecutor, for State of New Jersey (Ann M. Luvera, Assistant Prosecutor, on the motion).
Anderl and Oakley, Princeton, for Jean Morales (Mark A. Anderl, joined in the motion).
Before Judges WEISSBARD and GRAVES.
PER CURIAM.
This matter comes to us on an application by the State for emergent relief and for leave to appeal a ruling by the trial judge concerning the method to be used in conducting jury voir dire. Defense counsel joined in the State's application. We stayed the trial so that we could consider whether the proposed voir dire follows the dictates of a recently issued Directive from the Administrative Office of the Courts (AOC). Having reviewed AOC Directive 21-06 (the Directive), we conclude that the judge's proposed method of voir dire does not comport with the Directive and must be revised.
At the outset, the Directive, entitled, "Approved Jury Selection Standards, Including Model Voir Dire Questions," dated *1091 December 11, 2006, and effective for trials commencing on or after January 22, 2007, is unquestionably binding on all trial courts. In re P.L. 2001, Chapter 362, 186 N.J. 368, 379-80, 895 A.2d 1128 (2006); Pasqua v. Council, 186 N.J. 127, 152, 892 A.2d 663 (2006); State v. Linares, 192 N.J.Super. 391, 397, 470 A.2d 39 (Law Div.1983). The Directive has been promulgated by the Supreme Court which "has the power to promulgate rules of administration as well as practice and procedure" pursuant to the New Jersey Constitution. Linares, supra. In addition, as Judge Stern (then sitting in the Law Division) noted, "the Chief Justice, as administrative head of the court system, can promulgate binding directives either directly or through the Administrative Director of the Courts." Ibid. Thus, the Directive, which includes its commentary, has the force of law.
The Directive makes clear that the "use of the model voir dire questions is mandatory," as are certain methods for posing those questions to the prospective jurors. It is also emphatic in prohibiting certain practices that have been utilized in the past. These requirements are imposed in order to "establish uniform practices" that will "assure a thorough and meaningful inquiry into jurors' relevant attitudes. . . ."
The matter under review is a murder trial that is expected to last several weeks. The judge has proposed to present the jury panel en masse with a questionnaire containing all of the voir dire questions set out in the Directive, but without their follow-up sub-parts. The jurors will also be provided with pencils. The judge will then go over the questions with the panel and ask the jurors to mark any question to which they would respond affirmatively. When jurors are subsequently called to sit in the jury box, they will be asked if they marked any of the questions; if so, the necessary follow-up questions will be asked, either in the box or at side-bar, as appropriate. The jurors will also be told that they may express a desire to respond privately to any inquiry. The judge explained his proposed methods on the record on January 23, 2007, in the course of a motion for a stay of jury selection which was scheduled to begin that day. Both the prosecution and the defense objected to the proposed methodology on the basis that it did not comport with the Directive.
A useful starting point is the specific language in the trial court's order which brings the matter before us. In pertinent part, it reads:
Ordered that the State's application that the Court re-read the Model Voir Dire Questions set forth in the AOC Directive # 21-06 to each potential juror seated in the jury box as opposed to the procedure set forth on the record on January 23, 2007, is hereby denied for the reasons set forth on the record.
The Directive makes quite clear that "[t]he judge shall not pose the questions to the entire array, before seating the original panel in the box." While the judge is instructed to advise the jurors not called forward to listen "closely and carefully" to the questions posed to the jurors in the box, in case they are called on to replace an excused juror, "under no circumstances should the questions be posed to the entire array as a substitute for asking the questions to each juror in the box, nor may the asking of each question to each juror in the box be dispensed with before that juror is qualified." We conclude that the method proposed here does not comply with this aspect of the Directive. The questioning of the entire panel, with the questionnaire functioning as a memory aid, in our view, directly violates the Standards.
*1092 While the use of written questions is permitted "as an aid ... this may not serve as a substitute for orally asking each question to each juror." Posing the questions to the array runs the risk that some jurors, despite the court's instruction, may be inattentive, or have hearing problems, and may thereafter be embarrassed to admit they did not hear one or more questions. In addition, as the prosecutor suggested, a juror may not be able to read well, or at all, and may, therefore, be unable to correlate the question asked by the judge with the question on the paper. While some of these examples may be more hypothetical than realistic, they serve to point out the wisdom of the approach taken by the Directive. And while the Directive approves questioning the jurors "either individually, en banc, or a combination of the two," the reference to "en banc" clearly contemplates a jury in the box.
As we see it, one of the key reasons behind the Directive is stated in the paragraph generally prohibiting the use of questioning by means of written questionnaires, which is not the practice at issue here. As stated there, a critical part of voir dire is to provide counsel with an opportunity "to observe the jurors responding verbally to questions in order to get a better `feel' regarding the jurors." As with a witness, demeanor can be significant. Even if a juror claims to have no response to a particular question, the way in which the juror communicates that lack of response can be important to counsel.
We do not fault the trial judge for his effort to streamline the new process and for assuming that he had the discretion to do so. However, we interpret the Directive as leaving only a limited amount of judicial discretion, covering the ability to deal with unanticipated "circumstances as they evolve during the process." In addition, "[s]ome degree of latitude to allow for variation in style is acceptable, so long as the essential ingredients of a thorough and meaningful voir dire are included." This residual measure of discretion does not encompass the judge's proposed method in this case.
We recognize that the Directive may cause jury selection to take longer, but that has been deemed an acceptable price to pay for a jury without "bias, prejudice, or unfairness with regard to the trial matter or anyone involved on the trial." Accordingly, we grant leave to appeal and reverse the order under review. Our stay of the trial is lifted and the matter is remanded for jury selection in strict compliance with the Directive and with the views expressed herein.
Reversed and remanded.