# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3022-22

IN THE MATTER OF R.C.[1]

_____

Argued November 19, 2024 – Decided December 23, 2024

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Petition No. XTR-2022-000001.

Gabrielle M. Bamberski argued the cause for appellant R.C. (Dimin Fierro, LLC, attorneys; William N. Dimin, of counsel; Gabrielle M. Bamberski, on the briefs).

Edward F. Ray, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Edward F. Ray, on the brief).

PER CURIAM

---

[1] Records relating to FERPO proceedings are confidential and shall not be disclosed to persons other than the respondent except for good cause shown. Admin. Off. of the Cts., Admin. Directive #19-19, Guidelines for Extreme Risk Protective Orders attach. 1, Guideline 8(a) (Aug. 12, 2019) (hereinafter AOC Directive). We also refer to certain individuals whose statements and testimony are included in the record by their initials to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

Defendant R.C. appeals from an April 24, 2023 final extreme risk protective order (FERPO) entered against him pursuant to the Extreme Risk Protective Order Act of 2018 (the Act), N.J.S.A. 2C:58-20 to -32. Since the trial court's entry of the FERPO was supported by substantial credible evidence, we affirm.

I.

We discern the salient facts from the record developed during the April 24, 2023 FERPO hearing, at which Detective Sergeant William Phayre, defendant's mother (C.C.), and defendant's father (S.C.) testified.

On March 17, 2022 (the 2022 incident), the Maywood Police Department (MPD), received a 911 call reporting an erratic driver. When police officers Elias Atie and Lieutenant Derk Smith arrived at the scene, a witness told the officers they saw a black Ford F-150 with a New Jersey license plate "drive on the sidewalk, strike a tree and the front of the residence" before fleeing the scene.

After identifying defendant as the registered car owner, MPD officers arrived at defendant's address where they observed "damage to the front end of [defendant's] vehicle." The officers knocked on defendant's door and he answered, appearing to be intoxicated. Atie observed that defendant's eyes were

"watery and droopy," and "that [defendant's] jeans were wet, which led [Atie] to [believe] that [defendant] urinated in his pants during the [car] accident." The officers conducted two field sobriety tests, which defendant failed.

As Atie placed defendant under arrest, defendant was "talking in an aggressive manner" using expletives and "proceeded to turn and strike [Atie] with his arm causing [Atie] to slam into the front of the patrol car." By that time, Officer Timothy Cook had arrived at the scene to support Atie and Smith. After defendant struck Atie, Cook brought him to the ground, with Smith and Atie assisting Cook in placing defendant in handcuffs. During the struggle, Atie injured his back and sustained a laceration to his face; Cook also injured his right elbow and back and sustained a laceration to his hand and face. During transport, defendant continued to curse and made a derogatory statement regarding his perception of Atie's national origin.

When Phayre arrived to assist the officers at the MPD headquarters, they were processing defendant. Defendant did not follow the officers' directions and appeared to attempt to manipulate the Alcotest results by not blowing into the mouthpiece with enough force for the required duration, resulting in a refusal charge against him.

During Phayre's testimony, he recounted the events that occurred at

headquarters, stating, as his officers were processing defendant, they "came into my office . . . and advised me [defendant] was making some comments about their ballistic vests and their firearms and ammunition, which was kind of out of the ordinary." Defendant asked Phayre directly if he "considered [whether the .40 caliber gun contained] enough stopping power to stop a human." Phayre also testified that defendant's statements were concerning because he "appeared fixated on our weapons and [] vests," and referenced C4 explosives.

Phayre then conducted a firearms records check, which revealed that defendant owned a Glock 17 handgun. Atie called defendant's mother, C.C., and asked her to retrieve defendant from police headquarters. During this conversation, defendant' mother "made comments indicating that she was concerned about her son's mental state." C.C. also stated that defendant "has [had a drinking problem] in the past but has been really good lately."

At headquarters, C.C. told Phayre that following an incident on August 9, 2021 (the 2021 incident), she called 911 to report a dispute between defendant and his father. During the 2021 incident, she "was concerned" about her son's mental state and alcohol consumption, so she hid her son's gun and ammunition. When Phayre asked if defendant had a drinking problem, C.C. responded she "could only recall one time where he was intoxicated and had an argument with

4

his father." The magazines of ammunition remained hidden as of the 2022 incident. C.C. revealed that her son was very insecure and "becomes angry sometimes and has made comments in the past stating that he was 'good for nothing.'"

After speaking with C.C., Phayre contacted the Bergen County Prosecutor's Office, which advised him to apply for a temporary extreme risk protective order (TERPO). On March 18, 2022, Phayre signed a petition for a TERPO on behalf of the MPD seeking an order prohibiting defendant from owning, possessing, purchasing, or receiving firearms and ammunition. The municipal court granted the TERPO. Shortly thereafter, the officers retrieved defendant's firearm from his home. Defendant was charged with a variety of crimes, including aggravated assault on an officer and resisting arrest, and was also issued several motor vehicle summonses, including driving under the influence and leaving the scene of an accident involving property damage.

A few months later, defendant was approved for a twelve-month Pretrial Intervention (PTI) program, conditioned on receiving mental health, drug, and alcohol treatment, agreeing to forfeit the weapons seized under the TERPO, and pleading guilty to DWI. Clinician Jeanne Marvel wrote a letter to the court stating defendant attended his Addiction Recovery Program assessment at Care

Plus on August 10, 2022, and his drug screens were all negative aside from prescribed medication. Marvel recommended defendant continue sessions with his private psychiatrist.

C.C. testified at the FERPO hearing that defendant has been receiving treatment for attention-deficit hyperactivity disorder (ADHD) for the past seven years. To her knowledge, defendant has never seen a private psychiatrist, but in the past has seen a school psychologist, and has been compliant with taking prescribed ADHD medication.

C.C.'s testimony at the FERPO hearing contradicted statements she made to Phayre at headquarters, testifying that she removed the magazines from the gun because "I don't like guns. That's just me personally." On cross examination, C.C. maintained she removed the magazines from the gun, and "kept them separate[d]," because "that's just what [she] wanted to do." She also asserted defendant does not have alcohol abuse issues and has never seen defendant intoxicated before. C.C. testified she told an MPD officer at headquarters "flat out" this incident was "a one-off" and the 2021 incident did not involve alcohol or weapons.

S.C., who is a professor of textile science, testified that defendant's comments regarding the Kevlar vests were not unusual because they had a

6

previous discussion about the material based on one of his student's research project. S.C. testified the 2021 incident was "just a verbal argument," and he was not sure why C.C. called the police.

S.C. testified he had never seen defendant intoxicated prior to the 2022 incident and had only seen defendant drink "a beer . . . like at Christmas." S.C. testified defendant has "been very good" about taking his ADHD medication, but S.C. did not know the name or specialty of defendant's doctor.

After the hearing, the trial court granted the FERPO in an oral decision, followed by a written amplification pursuant to Rule 2:5-1(d). The trial court found Phayre's testimony credible, stating "Phayre spoke clearly and answered all of counsels' questions directly without hesitation."

The trial court did not find C.C. credible, stating she was "repeatedly evasive and resisted answering questions that were asked of her by the Prosecutor." The trial court observed that C.C. testified she had never seen defendant intoxicated before, "directly contradict[ing] what officers [reported] she told them regarding [the 2021 incident]" at headquarters. The trial court also specifically did not find C.C.'s testimony about defendant's ADHD treatment credible. As a whole, the court found C.C. not to be credible because "the vast majority of her testimony [was] untrustworthy." The court also found

S.C.'s testimony was "overall not credible."

In analyzing the required FERPO factors, the trial court found in favor of factor one, that defendant had a "history of threats or acts of violence against self or others" based on his actions and statements during the 2021 and 2022 incidents. The trial court considered Phayre's credible testimony that defendant was aggressive and confrontational during his arrest in the 2022 incident. The trial court also considered Phayre's testimony credible regarding defendant's comments and C.C.'s actions in hiding defendant's magazines as of the 2021 incident. The trial court also found in favor of factor two, that defendant had a "history of use, attempted use, or threatened use of physical force against another person," relying on the same facts.

As to factor seven, the trial court found defendant had "a history of alcohol abuse due to his . . . 2022 arrest for [DWI], his mother's statement to police, and the 2021 argument with his father . . . ." The trial court determined defendant's parents tried to minimize the altercation and deny defendant's intoxication, concluding the 2022 incident is evidence of an individual who has a problem with alcohol or who acts erratically and dangerously while intoxicated.

As to factors thirteen and fifteen, the trial court "placed a small amount of weight" on defendant's ADHD diagnosis. After analyzing the required factors,

the trial court held petitioner met its burden and entered the FERPO, concluding:

> [D]ue to [defendant's] assault of officers during his March 2022 arrest, his statements to police while being processed for that same incident, his 2021 argument between [defendant] and his father, his instances of alcohol abuse, and his diagnosis and treatment for ADHD, . . . [defendant] showed by a preponderance of the evidence that [defendant] poses a significant danger of bodily injury to self or others by owning or possessing a firearm.

This appeal followed.

II.

Defendant argues the following points on appeal:

> POINT I
> THIS COURT SHOULD REVERSE THE TRIAL COURT'S APRIL 24, 2023 ORDER BECAUSE THE TRIAL JUDGE ERRED IN APPLYING THE LAW, INEXPLICABLY DEPARTED FROM ESTABLISHED POLICIES, EXERCISED ITS DISCRETION IN A MANNER THAT IS MANIFESTLY UNJUST, AND RESTED ITS DECISION ON AN IMPERMISSIBLE BASIS.
>
> POINT II
> THE TRIAL COURT'S FACTUAL FINDINGS AND CREDIBILITY FINDINGS ARE NOT SUPPORTED BY ADEQUATE, SUBSTANTIAL, OR CREDIBLE EVIDENCE.

Defendant argues the trial court improperly relied on the 2022 incident in evaluating factors one, two, and seven and failed to support its determination to enter the FERPO with credible evidence. In response, the State argues the

9

Legislature intended the definition of "any history" to broadly encompass a defendant's past acts and the credible evidence in the record substantiates the entry of the FERPO.

Our review of a trial court's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005) (quoting Cesare, 154 N.J. at 412). Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Cesare, 154 N.J. at 412. We therefore will "not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid.

However, the interpretation of a statute is a legal question. State v. Revie, 220 N.J. 126, 132 (2014). As such, we review disputes of statutory interpretation de novo, "unconstrained by deference to the decisions of the trial court . . . ." State v. Grate, 220 N.J. 317, 329 (2015).

III.

A-3022-22

We conclude the trial court did not err in entering the FERPO based on the substantial, credible evidence adduced at the hearing.

A.

Under New Jersey law, the Act "permits the emergent removal of weapons from any person who poses a danger to self or others," In re D.L.B., "supplement[ing] other statutory mechanisms for removing firearms from persons who legally possess them." 468 N.J. Super. 397, 401 (App. Div. 2021) (citing N.J.S.A. 2C:58-3(f)). There is a two-step process to removing firearms: first the court decides if "it will issue a temporary order to remove firearms" and then, "after a plenary hearing, the court will consider issuing a final order to remove the firearms indefinitely." Id. at 401-02 (citing N.J.S.A. 2C:58-23 and N.J.S.A. 2C:58-24).

In granting a TERPO, N.J.S.A. 2C:58-23(f) requires a court to consider whether a respondent:

> (1) has any history of threats or acts of violence by the respondent directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;
>
> (3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining

11

order issued pursuant to the 'Prevention of Domestic Violence Act of 1991,' . . . ;

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the 'Victim's Assistance and Survivor Protection Act' . . . ;

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to [N.J.S.A. 2C:12-10], or domestic violence offense enumerated in [N.J.S.A. 2C:25-19];

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

N.J.S.A. 2C:58-24(b) governs the issuance of FERPOs, providing in part

> If the court finds by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the court shall issue an extreme risk protective order.

N.J.S.A. 2C:58-23(f) and N.J.S.A. 2C:58-24(b) must be read in harmony with each other and the AOC Directive, which "summarizes the Act and

12

promulgates Guidelines . . . that prescribe the process for obtaining orders under the Act." D.L.B., 468 N.J. Super. at 402. In D.L.B., we concluded, "[b]ecause the AOC Directive implements the Court's constitutional power to promulgate rules governing practice and procedure and administration of the courts, the AOC Guidelines have 'the force of law.'" Ibid. (citing State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007)).

In addition to statutory factors one through eight, the AOC Directive's Guideline 3(d) also requires a trial court to consider "whether respondent: (9) has recklessly used, displayed, or brandished a firearm; (10) has an existing or previous [extreme risk protective order] issued against [them]; and (11) has previously violated an [extreme risk protective order] issued against [them]." Id. at 404 (citing AOC Directive Guideline 3(d)). The eleven factors together comprise the "behavioral" factors. Ibid.

A trial court must first find one of the eleven "behavioral" factors before considering factors twelve through fifteen. Ibid. In pertinent part, these include whether a defendant:

> (12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;
>
> (13) has received or is receiving mental health treatment;

13

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

[Ibid. (citing AOC Directive Guideline 3(d)).]

No single factor is determinative, rather, in weighing each of the factors, "[t]he court shall issue the FERPO . . . if it finds 'by a preponderance of the evidence at the hearing that the [individual] poses a significant danger of bodily injury to the [individual]'s self or others' by possessing a firearm." Id. at 406-07 (quoting N.J.S.A. 2C:58-24(b)).

We affirm the trial court's entry of the FERPO determining the trial court's findings are supported by adequate, substantial, and credible evidence. The trial court's factual findings related to factors one and two were based on credible testimony from Phayre, in addition to the police reports of the responding officers. The trial court found C.C. and S.C. not credible, pointing to the contradictory statements provided by C.C. to the police, which were subsequently recanted at the hearing, and its finding that S.C.'s testimony lacked believability. Based on our review of the record, the trial court did not go "so wide of the mark [such] that the judge was clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).

B.

We turn to defendant's arguments that the trial court erred in broadly applying factor seven, concerning defendant's "history of drug or alcohol abuse and recovery from this abuse." See N.J.S.A. 2C:58-23(f)(7). When interpreting a statute, "[t]he overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). If a plain language reading of the statute "leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007). Only if we find an ambiguity in the statutory language, do we turn to extrinsic evidence. State v. Olivero, 221 N.J. 632, 639 (2015).

We conclude since N.J.S.A. 2C:58-23(f)(1) and (2) unambiguously qualify "history" with the term "any," the statute was meant to be expansive allowing the trial court to consider "any history" of violence or physical force. "Any" is defined as "one or some indiscriminately of whatever kind . . . ." Merriam-Webster's Collegiate Dictionary, 647 (11th ed. 2022). In this case, the plain meaning of the statute is clear, and therefore, we should "apply that plain meaning and end our inquiry." In re H.D., 241 N.J. 412, 418 (2020) (citing

15

<u>Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins.</u>, 237 N.J. 482, 489 (2019)).

We are unpersuaded by defendant's argument that the court conducting a FERPO hearing should only consider events prior to the incident triggering the entry of a TERPO because during FRO hearings "courts consider 'history' separate and distinct from the triggering act . . . ." Defendant has not cited any legal authority for the proposition that courts conducting FERPO hearings are obligated to follow the same procedures required for FRO hearings.

We conclude the trial court did not err in considering defendant's injury to the police officers in the 2022 incident as evidence of factors one and two because the statute unambiguously states the trial court may consider "any" history of violence or threat of physical force. The same rationale applies to factor seven, which requires consideration of "<u>any</u> history of drug or alcohol abuse and recovery from this abuse . . . ." <u>See</u> N.J.S.A. 2C:58-23(f)(7) (emphasis added). Defendant does not support his argument that considering the 2022 incident for more than one factor violates principles of collateral estoppel and double jeopardy with any prevailing law.

We defer to the trial court's factual findings based on its credibility determinations because they were not "clearly mistaken." <u>See</u> <u>N.J. Div. of</u>

Youth & Fam. Servs., 191 N.J. at 605. The trial court did not find C.C.'s and S.C.'s testimony related to this factor credible, pointing out the inconsistencies that were apparent upon a comparison of C.C.'s testimony to the statements she made to the police.

The credible testimony in the record contains ample evidence establishing defendant's history of substance abuse. We are also unconvinced that factor one requires a formal diagnosis that defendant has a history of substance abuse. The trial court properly considered the credible facts in the record, including defendant's 2022 incident and subsequent DWI arrest, his disrespect and aggression to the arresting officers that caused injuries, and his comments about weapons and ballistic vests.

The trial court found that during defendant's processing at police headquarters for the 2022 incident, defendant was clearly intoxicated and accepted the evidence in the record that defendant was intoxicated during the 2021 altercation with his father. We discern no error with the trial court's factual findings that defendant was engaging in services related to alcohol abuse, considering defendant's acceptance into the PTI Program, where a condition of acceptance into the program was that defendant must engage in drug and alcohol counseling. The trial court also evaluated the letter from Marvel, stating

defendant's drug screening was negative aside from his prescribed medication, attributing a small amount of weight to this evidence.

C.

Having found factors one, two, and seven (the "behavioral" factors), the trial court properly considered factors thirteen and fifteen. The trial court's determinations surrounding factors thirteen and fifteen are supported by adequate, substantial, and credible evidence, and were accorded appropriate weight. See Cesare, 154 N.J. at 412. Here, defendant had been diagnosed with, and took medications for, ADHD, a mental health disorder. Despite this diagnosis, there is nothing in the record indicating defendant sought continuous treatment outside of his prescribed medications with a private mental health professional, as recommended by Marvel, defendant's clinician at the Alcohol Recovery Program. Thus, the trial court properly considered factors thirteen and fifteen.

D.

We are unconvinced defendant was deprived of due process by way of the State's proffering only Phayre's testimony, rather than from all officers involved.

Our jurisprudence establishes a FERPO may be predicated in part, on hearsay. There must be a residuum of competent evidence in the record to

18

support the issuance of a FERPO. <u>D.L.B.</u>, 468 N.J. Super. at 406 (citing <u>Weston v. State</u>, 60 N.J. 36, 51 (1972)).

Here, we are satisfied the trial court did not base its decision solely on hearsay. Phayre testified on personal knowledge regarding defendant's intoxication and interaction with the other officers, and defendant's concerning statements, his conversations with C.C. Phayre also authenticated the police reports from the 2022 incident. Defendant had the ability to subpoena other police officers to testify if he sought to elicit contrary facts, but failed to do so. We conclude the State's failure to proffer the testimony of all officers involved does not constitute a constitutional defect in the process afforded to defendant.

E.

For purposes of being thorough, we briefly address defendant's argument that the MPD was an improper petitioner despite defendant's failure to raise the issue below. [2]

Without providing law defendant argues a law enforcement agency is not included in the definition of "petitioner" in N.J.S.A. 2C:58-21, which allows a

---

[2] During oral arguments, defense counsel conceded the entry of the TERPO was not at issue for the purposes of this appeal. However, because the issues related to the entry of the TERPO were in the merits brief, even though they were not raised below, we nonetheless address them.

family or household member or a law enforcement officer to petition the court for an order under the Act. Nonetheless, we find the State complied with the requirements of the Act because the petition was supported by Phayre's affidavit made on personal knowledge. Since this issue was not raised to the trial court, our review under the plain error standard underpins our conclusion that any technical error was not clearly capable of producing an unjust result. See R. 2:10-2; State v. Singh, 245 N.J. 1, 12 (2021) (". . . an unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result.'").

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-3022-22