# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1113-23

IN THE MATTER OF N.T.T.[1]

_____

Submitted March 10, 2025 - Decided March 28, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Petition No. 1516 XTR 2023 000002.

Evan F. Nappen Attorney at Law, PC, attorneys for appellant N.T.T. (Ali Homayouni, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] Records relating to final extreme risk protective order ("FERPO") proceedings are confidential and shall not be disclosed to persons other than the respondent except for good cause shown. Admin Off. of the Cts., Admin. Directive #19-19, Guidelines for Extreme Risk Protective Orders attach. 1, at 15 (Aug. 12, 2019); see also Off. of the Att'y Gen., Law Enf't Directive No. 2019-2, Directive Pursuant to the Extreme Risk Protective Order Act of 2018 19 (Aug. 15, 2019).

Respondent N.T.T. ("Neil") appeals the trial court's grant of a final extreme risk protective order ("FERPO") against him. After a plenary hearing, the trial court found by a preponderance of the evidence that Neil posed a significant danger to himself or others by possessing firearms and granted the FERPO. Because the trial court properly applied the statutory factors and there existed adequate, substantial, and credible evidence in the record warranting issuance of the FERPO, we affirm.

I.

G.W. ("Gwen"), Neil's partner, filed a report of domestic harassment with the police department. She gave a voluntary written statement to the police wherein she stated:

> On the [sixth] of September[,] I was made aware of some information regarding my partner [Neil]. I came to my house with our daughter, and my cousin to gather some belongings as I did not feel comfortable and safe being in the house. [Neil] continued to call and when I finally spoke to him I told him that we were over and I needed a few days. I told him we would speak in a few days [and] to leave me alone. Sept[ember] [seventh] he called me excessively and when I didn't answer he called my employment an elementary school over [ten] [times]. He messaged all day about self harm and why won't I help. He then called me [twenty-three] [times] on my ride home from work. I spoke to him at 4:34 pm asking him to stop calling and restated we were done. He began calling my [second] job several times demanding to speak to me. I called out because I was

2

afraid he would show up. I am here because I am worried.

Gwen also informed the police officer, who later testified at the FERPO hearing, Neil had a history of drug usage.

Gwen showed the officer numerous text messages. These text messages from Neil stated, in pertinent part, the following: "I need help"; "I wanna [sic] hurt myself"; "[p]lease help me"; "I'm in a bad spot right now"; "I got no one"; "I'm an addict"; and "[f][*****] my family up." Among Gwen's replies, she stated: "[w]ell you seem to have a lot of people. Call Ryan." Neil then responded with several more texts stating: "I begged for help from him too"; "I wanna die and disappear"; "I hate my life"; "[n]o one wants to help"; "[I don't know] where to go"; "[n]o one's helping me"; "I'm a f[******] mess"; "I want to die right now"; and finally:

> Thanks for talking and helping me find help[. D]on't want to live at this point[. N]obody cares and I found out that [sic] today. I reached out to everyone I care about and no one will help me find help. I love you just so [yo]u know[. A]nd sorry I f[*****] up.[ Y]ou will be better off with out [sic] me sorry for reaching out for help from you[.]

The officer informed Gwen of her rights as a victim of domestic violence, including the opportunity to seek a temporary restraining order, which she declined to pursue. As part of the investigation for the domestic violence

3

incident, the officer asked Gwen whether Neil had access to firearms and Gwen responded there were firearms in the bedroom safe. The officer filed a temporary extreme risk protective order ("TERPO") petition, which was granted. A search warrant attached to the TERPO petition was subsequently issued for Neil's firearms.

Police officers responded to Neil's residence and made numerous attempts to contact him. After knocking on Neil's front door several times, the officers waited approximately ten minutes before observing what appeared to be Neil laying down. The officers could see only Neil's feet and were unsure whether Neil was moving. The officers continued to knock on both Neil's window and door and eventually made verbal contact with him through an open window, prompting Neil to slam the window shut. This stand-off continued for approximately an hour and twenty minutes. When police were finally able to make phone contact with Neil, he emerged from his house, spoke with officers, and granted them access to his safe in the bedroom where five firearms were recovered: two handguns, a rifle, and two twelve-gauge shotguns.

The officers served the TERPO and informed Neil they were at his residence because of the concerning text messages he had sent to Gwen. Neil was then transported to a local hospital for a psychological exam but was

A-1113-23

discharged the next day after testing negative for drugs and alcohol and being deemed not a danger to himself or others. Upon discharge, the hospital referred Neil to peer recovery therapy and outpatient treatment.

Four days later, Neil self-admitted to an Intensive Outpatient Program ("IOP"), which consisted of clinical and medical care three days a week for three hours each day. As of the FERPO hearing approximately six weeks later, Neil did not have a determined discharge date from the IOP, but the average length of stay for such programs is twelve to fifteen weeks.

At the FERPO hearing, the officer who met with Gwen and was amongst the officers serving the TERPO ("testifying officer") was the State's only witness. Neil, self-represented, also testified. The State submitted into evidence Gwen's voluntary statement to the police department, the TERPO petition, the TERPO order, the text messages between Gwen and Neil, the firearms receipt, the weapons inventory, the police report, a prior final restraining order entered against Neil,[2] and Neil's criminal history check. Neil submitted into evidence hospital records from when he was admitted after being served with the TERPO, a letter from his IOP, and one drug screen from a week prior.

---

[2] This final restraining order was dismissed approximately twenty years before and correctly deemed "very remote" by the trial court.

A-1113-23

At the FERPO hearing, the testifying officer stated he knew Neil was taken for a mental health evaluation but was unaware of any subsequent mental health diagnoses. He also stated he personally did not witness Neil express any desire to hurt himself, and Neil did not appear to be under the influence of drugs or alcohol when he was served with the TERPO.

At the hearing, Neil testified he was evaluated at the medical center, tested negative for alcohol and drugs, and was discharged because he was not a harm to himself or others. Neil also described his outpatient treatment, which included his attendance at therapy and Narcotics Anonymous, and testified that he was seven weeks sober as of the FERPO hearing.

The laboratory report Neil admitted into evidence from his IOP included his diagnoses: "alcohol use disorder; severe, . . . severe cannabis use disorder, cocaine use disorder, recurrent major depressive disorder, and obsessive-compulsive personality disorder." When asked by the State whether the listed diagnoses were correct, Neil responded: "That's what it states. I was never really diagnosed with any of that. . . . That's just my intake, them questioning me and taking my word. And I'm not a medical professional. But I do believe I had an alcohol dependency. And that's why I'm seeking help and getting help."

6

Neil did not deny sending Gwen the text messages entered into evidence, but acknowledged they were sent "out of sadness" and that his actions were "very stupid." Neil concluded his testimony by stating he was getting treatment and feeling clear-headed.

The trial court found Neil posed a significant danger of bodily injury to self by possessing, purchasing, or owning a firearm and granted the FERPO. This appeal followed.

II.

"Our review of a forfeiture of firearms . . . is deferential." In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 199 (App. Div. 2023). "[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Id. at 171 (alteration in original) (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015). "Heightened deference should be given to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified." Ibid. Accordingly, we do not disturb the trial court's factual findings and legal conclusions "unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the

7

interests of justice.'" Ibid. (quoting Griepenburg, 220 N.J. at 254). Notwithstanding, we review questions of law de novo. Ibid.

The New Jersey Legislature enacted the Extreme Risk Protective Order Act of 2018 ("ERPO") to prohibit individuals who "pose[] a significant danger of bodily injury to [themselves] or others . . . . from having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J.S.A. 2C:58-24(b), (d). ERPO not only provides a family or household member or law enforcement officer the opportunity to file a petition with the Criminal Division to initiate a TERPO, but permits "other persons who are neither family nor household members nor law enforcement [to] request at a law enforcement agency that a law enforcement officer file a petition with the court." Admin. Directive #19-19, at 2.[3]

When presented with a TERPO petition, the trial court is tasked with addressing the following fifteen factors as to whether respondent:

> (1) has any history of threats or acts of violence by the respondent directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

---

[3] Directives promulgated by the Acting Administrative Director of the Courts "ha[ve] the force of law" and are binding on the courts. See State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007).

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991" (N.J.S.A. 2C:25-17 [to -35]);

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015" (N.J.S.A. 2C:14-13 [to -21]);

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to N.J.S.A. 2C:12-10, or domestic violence offense enumerated in N.J.S.A. 2C:25-19;

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse;

(8) has recently acquired a firearm, ammunition, or other deadly weapon;

(9) has recklessly used, displayed, or brandished a firearm;

(10) has an existing or previous extreme risk protective order issued against him or her;

(11) has previously violated an extreme risk protective order issued against him or her;

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

9

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

[Admin. Directive #19-19, at 4-5.]

Only factors one through eight are enumerated in N.J.S.A. 2C:58-23(f). Directive #19-19 requires factors nine through eleven also be considered and permits the court to consider additional factors twelve through fifteen, but only if the court finds one or more of factors one through eleven. Admin. Directive #19-19, at 5. If the trial judge grants the TERPO upon considering these factors, a search warrant shall issue for the respondent's firearms. N.J.S.A. 2C:58-26(b).

A plenary hearing must thereafter be held to determine whether a FERPO should be issued. N.J.S.A. 2C:58-24(a). Importantly, at the hearing, "[t]he rules governing admissibility of evidence at trial shall not apply to the presentation and consideration of information." Admin. Directive #19-19, attach. 1, at 10. The trial court shall issue a FERPO if it "finds by a preponderance of the evidence . . . that the respondent poses a significant danger of bodily injury to the respondent's self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J.S.A. 2C:58-24(b)).

10

III.

On appeal, Neil asks this court to reverse the FERPO entered against him and raises three issues: (1) the trial court erred when it found factors one and seven of N.J.S.A. 2C:58-23(f) applied; (2) the trial court improperly considered and applied Administrative Directive #19-19 factors twelve to fifteen because none of the first eleven factors applied; and (3) the trial court failed to construe "any benefit of doubt as to the evidence " in Neil's favor because of the "clear precedent disfavoring forfeitures."

Addressing the first factor, Neil maintains his text messages with Gwen do not provide adequate, let alone substantial, credible evidence that he made any actual threat to harm himself or to conclude he poses significant danger to himself by owning firearms. He alleges his statements that "he hated his life" and "wanted to die or hurt himself" were not actually threats of self-harm, but instead attempts to evoke sympathy from Gwen. We disagree. The record demonstrates adequate, substantial evidence of Neil's threat to self-harm. His statements, which he does not dispute sending to Gwen, are replete with admissions the court relied upon to determine the State met factor one by a preponderance of the evidence.

11

Neil also argues the trial judge's finding of factor seven—his history of substance abuse—lacks adequate, substantial, or credible evidence to support this finding, adding the testifying officer did not have personal knowledge of Neil's alleged drug or alcohol abuse upon filing the TERPO petition. In addition, Neil claims his testimony indicated only a possible history of alcohol dependency, not a history of substance abuse. He maintains the evaluation from his IOP included self-reported diagnoses that were "not based on an evaluation conducted by a mental health professional."

The trial court found Neil "did, according to his own testimony as well as the information conveyed by [Gwen] to [the testifying officer], [have] a history of drug and alcohol abuse for which he is currently treating." The trial court further found Neil's text message to Gwen stating: "I'm an addict," and the testifying officer's testimony that Gwen informed him of Neil's history of drug use, supported a factor seven finding. Moreover, Neil himself testified he "believe[d] [he] had an alcohol dependency." Finally, although Neil was not diagnosed by a mental health professional, he was receiving IOP treatment and self-reported a history of substance abuse that included alcohol, marijuana, and cocaine. Because we find the trial court's conclusions of factors one and seven

12

based on competent, relevant, and reasonably credible evidence, we decline to disturb the trial court's findings. See M.U., 475 N.J. Super. at 171.

Regarding his second argument, Neil contends the trial court erred in considering factors twelve through fifteen of Directive #19-19 because there was no substantial, credible evidence to support the court's finding that factors one and seven applied, an argument we have rejected. In the alternative, he argues there is no substantial or credible evidence in the record to support findings for factors thirteen and fifteen because the trial court incorrectly relied upon his self-reported diagnoses from an intake as evidence of existing mental health diagnoses. Neil's self-reported diagnoses that formed the basis for the trial court's findings of factors thirteen and fifteen are both statements by a party-opponent and statements against interest. See N.J.R.E. 803(b)(1); N.J.R.E. 803(c)(25). We note the diagnoses appeared in a document Neil submitted into evidence, and he presented no proof to refute the self-reported conditions, other than one negative laboratory test result taken the week prior to the FERPO hearing.

Finally, we decline to address the merits of Neil's third argument as it was not raised before the trial court, see State v. Galicia, 210 N.J. 364, 383 (2012) ("Generally, an appellate court will not consider issues, even constitutional ones,

13

which were not raised below"), except to note we have consistently found actions for the forfeiture of firearms that are rooted in statutory law are constitutional, pursuant to the preponderance of the evidence standard applied by the trial court. See, e.g., Crespo v. Crespo, 408 N.J. Super. 25, 37 (App. Div. 2009), aff'd o.b., 201 N.J. 207 (2010) (concluding law enforcement's authority to seize firearms pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 and the Act's use of the preponderance standard is constitutional) State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004) ("[T]he burden of proof is upon the State to show, by a preponderance of the evidence, that forfeiture [of firearms] is legally warranted" when forfeiture is sought pursuant to N.J.S.A. 2C:25-21(d)(1) of the Prevention of Domestic Violence Act).

To the extent we have not addressed Neil's remaining arguments on appeal, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division