# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0738-24

IN THE MATTER OF
N.A.C.

_____

Submitted February 2, 2026 – Decided February 20, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Petition No. 0233 XTR 2023-000001.

Evan F. Nappen Attorney at Law PC, attorneys for appellant N.A.C. (Louis P. Nappen, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Ian Kennedy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

N.A.C.[1] appeals from a September 30, 2024 Final Extreme Risk Protective

Order ("FERPO") entered against him, pursuant to the Extreme Risk Protective

---

[1] We use initials because "[a]ll records related to proceedings for [FERPOs] are confidential and may not be disclosed to anyone other than the respondent . . . ,

Order Act of 2018 ("the ERPO Act"), N.J.S.A. 2C:58-20 to -32.  Discerning no error on the part of the court, we affirm.

I.

We glean the following facts from the record.  On September 27, 2023, the mayor of Mahwah, Jim Wysocki, contacted Lieutenant Michael Blondin of the Mahwah Police Department ("MPD") to report that N.A.C. had placed large concrete blocks and heavy machinery along a roadway near N.A.C.'s property.  The Mayor requested that the concrete blocks and machinery be moved, expressing concern regarding emergency access to the area.  That same day, Lieutenant Blondin contacted N.A.C. about removing the items, and N.A.C. explained that the objects were being used to prevent access and illegal dumping on his property, but also stated he understood and would comply with the Mayor's request.

A few days later, Lieutenant Blondin received an angry voicemail message from N.A.C. on his police department phone line, in which N.A.C. complained about damage to his construction equipment.  In the voicemail, N.A.C. could be heard saying:

except if good cause is found by the court to release such records."  Admin. Off. of the Cts., Administrative Directive #19-19, Guidelines for Extreme Risk Protective Orders (Aug. 12, 2019) ("AOC Guidelines").

A-0738-24

If I don't get an answer by f[****] Monday morning as to who f[****] broke my s[***], I'm suing you, I'm suing f[****] [the Mayor], I'm suing the f[****] Mahwah Police Department. I'm f[****] going to come to [the Mayor's] house and burn the mother f[*****] down. I'm sick of being taken advantage of.

I do one f[******] one thing, and there's a repercussion always with you mother[*****]s. Call me back.

Lieutenant Blondin forwarded the voicemail message to the on-duty lieutenants, who subsequently notified the Mayor. After listening to the message, the Mayor reported that he felt unsafe, feared for his safety and believed N.A.C. might carry out the threat. Later that same day, Mahwah police charged N.A.C. with third-degree terroristic threats, N.J.S.A. 2C:12-3(b) and attempted to serve him with a complaint summons.

A subsequent police investigation revealed that N.A.C. lawfully possessed twelve firearms, including handguns and rifles. Given this discovery, the MPD immediately applied for a Temporary Extreme Risk Protective Order ("TERPO") and a search warrant authorizing the search and seizure of firearms at N.A.C.'s residence. In the certifications accompanying the TERPO application, Lieutenants Keith Iorio and Blondin recounted the facts surrounding N.A.C.'s threatening voicemail and his firearms history, which showed N.A.C. owned multiple firearms.

A-0738-24

A Mahwah municipal judge granted the TERPO and search warrant the same day following an ex parte proceeding, authorizing police to search N.A.C.'s residence for twelve firearms—six rifles and six handguns—and ammunition.

Pursuant to the TERPO, police attempted to execute a search of N.A.C.'s residence on October 2, 2023, but were informed by N.A.C.'s father that he was away in Florida. According to the police record, N.A.C.'s father, who also resided at the residence, answered the door and informed police that the firearms had been sold. He permitted police access to conduct the search of the premises, however, no firearms were recovered.

When N.A.C. returned from Florida, he was formally served the TERPO. A Bergen County grand jury subsequently indicted N.A.C. for third-degree terroristic threats, N.J.S.A. 2C:12-3(a). Ultimately, the charge was resolved when N.A.C. was accepted into the court's Pretrial Intervention Program and agreed to anger management.

On September 30, 2024, a judge conducted a hearing on the FERPO application. At the hearing, the State presented Lieutenant Blondin as its sole witness. Lieutenant Blondin testified regarding his receipt of N.A.C.'s threatening voicemail and described the events leading up to and following his

4

receipt of the voicemail, including N.A.C.'s prior communications with police and the department's response.

N.A.C. did not testify, but provided closing argument explaining that he left the voicemail because he was upset that his property had been vandalized. He further argued that he had been involved in a years-long legal dispute with Mahwah and neighboring Rockland County, New York, and it was his frustration over the vandalism of his property that led to the statements in the voicemail.

At the conclusion of the testimony, the judge summarized the evidence presented by the State, including the testimony of Lieutenant Blondin, whom he found credible, and granted the FERPO, finding by a preponderance of the evidence that N.A.C. "threatened to burn down a municipal official's home," and determined the threat was "explicit," and that it was "specific as to place, date, and time of day." The judge further found N.A.C.'s statements were "intended to cause fear or terror" or, at a minimum, to prompt the official to evacuate his residence. The judge also found the voicemail to be a "credible threat," emphasizing that it was "knowingly sent to a Township police officer," that N.A.C. "must have known the official would learn of the threat and that the call would cause a response," and that N.A.C. nevertheless "determined to leave the

A-0738-24

threatening message anyway." Accordingly, the judge concluded that N.A.C. posed a significant danger to himself or others based on his ownership and possession of firearms and issued a FERPO. N.A.C. appealed, arguing the following points for our consideration:

> POINT I
>
> THE COURT BELOW ERRED [BY] FAILING TO FIND THAT [N.A.C.]'S STATEMENT WAS A "TRUE THREAT" PER [STATE V. FAIR, 256 N.J. 213 (2024)] AND STATE V. RUSSELL.
>
> POINT II
>
> THE COURT BELOW ERRED BY FINDING THAT THE [N.A.C.] CURRENTLY POSES A "SIGNIFICANT" THREAT.
>
> POINT III
>
> [N.A.C.] SHOULD NOT BE DEPRIVED OF HIS FUNDAMENTAL SECOND AMENDMENT RIGHTS FOR EXERCISING HIS FIRST AMENDMENT RIGHTS.

Following N.A.C.'s appeal, the judge filed an amplification pursuant to Rule 2:5-1(d), further explaining the basis for the entry of the FERPO and the evidence relied upon. In reviewing the evidence, the judge concluded the voicemail was "clearly a threat of violence" communicated to the police and the Mayor that was "unequivocally intended to cause fear or terror." Moreover, the

6

judge found the State had proven by a preponderance of the evidence that N.A.C. had a history of violent threats and threatening to use physical force against others, and that those two factors warranted the issuance of the FERPO under N.J.S.A. 2C:58-23(e).[2]

The judge also explained the basis for his finding that Lieutenant Blondin was a credible witness, specifically noting the Lieutenant's professional and pleasant demeanor, that "he answered all questions posed to him without evasion," and "had firsthand knowledge of the incident that gave rise to the instant action and the Court found him to be without an interest in the outcome of this matter and to be a credible witness."

## II.

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). We are bound by the trial court's factual findings "when supported by adequate, substantial, credible evidence." Id. at 411-12. When evidence is testimonial and involves credibility questions, deference is "especially appropriate" because the trial judge is the one

---

[2] Although the judge considered the State's introduction in evidence of a 2020 consent order in which N.A.C. agreed to forfeit certain firearm magazines and related items, the judge found it was "really not relevant" to the FERPO determination and did not rely on it as evidence of a prior conviction, violent conduct, or a history of arrests.

A-0738-24

who has observed the witnesses first-hand.  Id. at 412.  We will not disturb a trial court's findings unless they "went so wide of the mark that the judge was clearly mistaken."  N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).

The ERPO Act, also known as our "red flag law," "permits the emergent removal of weapons from any person who poses a danger to self or others."  In re D.L.B., 468 N.J. Super. 397, 400-01 (App. Div. 2021).  Pursuant to N.J.S.A. 2C:58-31, the Supreme Court promulgated the AOC Guidelines to effectuate the purposes of the ERPO Act.  In addition, pursuant to N.J.S.A. 2C:58-32, the Attorney General adopted Directive 2019-2 to implement the law.  See Off. of the Att'y Gen., Law Enf't Directive No. 2019-2, Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018 (Aug. 15, 2019) ("the AG Directive").

As the D.L.B. court has explained, the ERPO Act creates:

> a two-stage process for issuing temporary and final orders to remove a person's firearms and ammunition, firearms purchaser identification card, handgun purchase permit, and handgun carry permit. The court first decides, based on an ex parte documentary record, if it will issue a temporary order to remove firearms. Then, after a plenary hearing, the court decides if it will issue a final order to remove firearms indefinitely. The [ERPO] Act is loosely modeled on the process for

A-0738-24

obtaining temporary and final domestic violence restraining orders.

[D.L.B., 468 N.J. Super. at 401-02. (internal citations omitted).]

The AOC Guidelines and the AG Directive discuss the ERPO Act and "its background at length." Ibid. The AOC Guidelines "prescribe the process for obtaining orders under the [ERPO] Act" and, importantly, have "the force of law." Ibid. (citing State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007) (discussing court directives generally)). As such, courts must also comply with the requirements of the AOC Guidelines, in addition to the provisions of the ERPO Act. Ibid.

In granting a TERPO, the ERPO Act requires a court to consider whether a respondent:

> (1) has any history of threats or acts of violence by respondent directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;
>
> (3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," . . . ;
>
> (4) is the subject of a temporary or final protective order or has violated a temporary or final protective order

9

issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," . . . ;

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of [L. 1992, c. 209 (N.J.S.A. 2C:12-10)], or domestic violence offense enumerated in section 3 of [L. 1991, c. 261 (N.J.S.A. 2C:25-19)];

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

[N.J.S.A. 2C:58-23(f).]

Moreover, AOC Guideline 3(d)(1) to (11) also requires a court to consider additional factors, based on the ERPO Act's statement that the eight factors comprise a non-exclusive list, N.J.S.A. 2C:58-23(f), and the requirement that courts consider "any other relevant evidence" in deciding if it will issue a FERPO, N.J.S.A. 2C:58-24. See AOC Guidelines, at 6-7 (discussing additional factors). Those three additional factors pertain to whether the respondent:

(9) has recklessly used, displayed, or brandished a firearm;

(10) has an existing or previous extreme risk protective order issued against him or her; and

(11) has previously violated an extreme risk protective order issued against him or her.

[AOC Guideline 3(d).]

If a court finds at least one of the eleven "behavioral" factors, then it "may consider," AOC Guideline 3(d) (regarding TERPO), AOC Guideline 5(d) (regarding FERPO), and four additional factors pertaining to a person's mental health—whether the respondent:

> (12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;
>
> (13) has received or is receiving mental health treatment;
>
> (14) has complied or has failed to comply with any mental health treatment; and
>
> (15) has received a diagnosis of a mental health disorder.
>
> [AOC Guideline 3(d); see also D.L.B., 468 N.J. Super. at 404.]

However, a finding:

> of one or more factors may not be enough to support the issuance of a TERPO. The judge 'shall issue' the TERPO only 'if the court finds good cause to believe that the respondent poses an immediate and present

11

danger of causing bodily injury to the respondent or others by' possessing a firearm.

[D.L.B., 468 N.J. Super. at 405 (quoting N.J.S.A. 2C:58-23(e)); see also AOC Guideline 4(a).]

A TERPO may be granted ex parte based on the petitioner's affidavit. Ibid. (citing N.J.S.A. 2C:58-23(d); AOC Guideline 3(c)). The court shall also issue a search warrant for firearms and ammunition in the possession, custody, or control of a respondent or which the respondent could access, upon a showing of probable cause. Ibid. (citing Law Enf't Directive No. 2019-2, at § 6.4).

A respondent may apply for termination of a FERPO at any time following issuance of the order. N.J.S.A. 2C:58-25(c). The trial court must hold a hearing, at which it shall consider the N.J.S.A. 2C:58-23(f) factors, "as well as any other evidence including, but not limited to, whether the respondent has received, or is receiving, mental health treatment." Ibid.

> If the respondent petitioned for termination, the respondent shall bear the burden at the hearing of proving by a preponderance of the evidence that the respondent no longer poses a significant danger of causing bodily injury to the respondent's self or to other persons by having custody or control of, owning, possessing, purchasing, or receiving a firearm.
>
> [Ibid.]

A-0738-24

III.

As noted, before us, N.A.C. seeks reversal of the FERPO and argues: (1) the trial judge erred in finding his voicemail constituted a "true threat"; (2) the judge erred by determining he currently poses a "significant" danger to himself or others under N.J.S.A. 2C:58-24(b), claiming that the evidence did not demonstrate an ongoing threat or justify the issuance of a final order; and (3) the judge's issuance of the FERPO deprived him of both his First and Second Amendment rights.

In his first argument, N.A.C. maintains his voicemail message does not provide adequate, substantial evidence that he made any actual true threat to inflict harm against anyone. He asserts that his statement that he would go to the Mayor's home and burn it down was not intended to be taken literally but instead amount to "angry hyperbole" or political dissent expressing his frustration with ongoing property disputes and perceived municipal inaction. N.A.C. urges us to consider his message as mere venting or political dissent. Because N.A.C. argues his voicemail message did not constitute a true threat,

we analyze his claims under our Supreme Court's holding in State v. Fair, 256 N.J. 213, 220 (2024).[3]

In his second argument, N.A.C. contends that the judge erred by determining that he currently poses a "significant danger of bodily injury" to himself or others, as required under N.J.S.A. 2C:58-24(b). He further contends his remarks were part of an isolated outburst, that he completed anger management, expressed remorse, and thus, was not a significant danger to anyone.

Here, the judge found N.A.C.'s voicemail message to be "explicit," "threatening," and "particularly disturbing as it spelled out the type of dangerous activity threatened and was specific as to place, date, and time of day." The judge further emphasized that the threat was "knowingly sent to a Township police officer," and that N.A.C. "must have known the official would learn of the threat and that the call would cause a response." The judge also noted that the message was "unequivocally intended to cause fear or terror in the public official or at least to have the official evacuate his home." The judge,

---

[3] In Fair, our Court held the test for determining a true threat is whether a reasonable person in the victim's position would view the statement as a threat when considering the totality of the circumstances. Ibid.

specifically found by a preponderance of the evidence that N.A.C.'s ownership and possession of firearms posed a significant danger, based on the explicit and targeted nature of his threat, the fear it generated, and N.A.C.'s demonstrated lack of impulse control.

Measured against the above legal principles and applying our Court's holding in Fair to the facts in this record, we reject N.A.C.'s contentions raised in points I and II and affirm substantially for the reasons set forth in the judge's decision as we are satisfied the court's factual findings are fully supported by the record.  We provide the following brief comments to amplify our decision.

We are unpersuaded by N.A.C.'s argument that "history" is necessarily "more than one threat, [and] not a one-off outburst during a moment of intense political frustration."  N.A.C. has not cited any legal authority for this proposition, and there is no requirement in FERPO to treat "history" that way. Moreover, the Legislature's use of the phrase "any history" in N.J.S.A. 2C:58-23(f)(1) and (2) reflects an intent that the term "history" must be construed broadly, to allow the incident triggering the entry of the TERPO to be included as a part of "any history" consistent with factor one.  See In re H.D., 241 N.J. 412, 418 (2020) (citing Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019)) (recognizing that where statutory

language is clear and unambiguous, courts must apply its plain meaning of the statute). Accordingly, we discern no error in the judge's reliance on factors one and two to satisfy the statute's requirements. We therefore agree with the judge that when viewed in the context of the undisputed evidence, the State sufficiently proved by a preponderance of the evidence that N.A.C.'s possession and ownership of firearms posed a significant danger to others. Moreover, the judge's factual and credibility findings are consistent with those of the municipal court and, again, are amply supported by the record. State v. Locurto, 157 N.J. 463, 474 (1999).

Finally, with respect to N.A.C.'s arguments in Point III, while we generally decline to address issues, even constitutional ones, not raised below, see State v. Galicia, 210 N.J. 364, 383 (2012), we are nevertheless satisfied that the judge's grant of the FERPO did not violate N.A.C.'s constitutional rights. We have consistently held that the forfeiture of firearms rooted in statutory law is constitutional, pursuant to the preponderance of the evidence standard applied by the trial court. See, e.g., Crespo v. Crespo, 408 N.J. Super. 25, 37 (App. Div. 2009), aff'd o.b., 201 N.J. 207 (2010) (concluding law enforcement's authority to seize firearms pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 and its use of the preponderance standard is constitutional);

16

State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004) ("[T]he burden of proof is upon the State to show, by a preponderance of the evidence, that forfeiture [of firearms] is legally warranted" when forfeiture is sought pursuant to N.J.S.A. 2C:25-21(d)(1) of the Prevention of Domestic Violence Act).

As our Court has explained, "a statute which criminalizes 'a form of pure speech' must, consistent with the 'commands of the First Amendment,' distinguish between actual threats of violence and constitutionally protected speech." Fair, 256 N.J. at 229 (quoting Watts v. United States, 394 U.S. 705, 708 (1969)). Having concluded that N.A.C.'s statements constitute a true threat, we disagree with any argument that his threat to burn down the Mayor's home is protected speech under the State and Federal Constitutions. Accordingly, N.A.C.'s challenge to the FERPO based on constitutional grounds is without merit.

To the extent we have not addressed N.A.C.'s remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hasley*

Clerk of the Appellate Division

A-0738-24